UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14275-CIV-ALTMAN

**MAXIMO GOMEZ**,

    *Plaintiff*,

v.

**CAPTAIN VERNON**, *and*
**K. LAYTON**,

    *Defendants*.

_____/

## ORDER

Maximo Gomez is serving a life sentence in the custody of the Florida Department of Corrections. In this civil-rights complaint under 42 U.S.C. § 1983, Gomez alleges that, while he was incarcerated at the Martin Correctional Institution ("Martin C.I."), two correctional officials—"Captain Vernon" and "K. Layton" (our "Defendants")—ordered another inmate to violently stab him. *See* Complaint [ECF No. 1] at 11–12. Based on this misconduct, he's asserted a deliberate-indifference claim under the Eighth Amendment against both officers. Because Gomez has made out a plausible Eighth Amendment claim against the two Defendants, we'll allow the Complaint to **PROCEED**.[1]

### THE FACTUAL ALLEGATIONS

Gomez was housed at Martin C.I. from May 13, 2019, until December 9, 2020. *See* Complaint at 4. On August 14, 2020, at approximately 1:30 PM, Gomez was assigned to "cut grass outside the education building." *Id.* at 8. Gomez became thirsty while cutting the grass and decided to "enter the

---

[1] At this preliminary phase of the case, we must accept Gomez's factual allegations as true. It may turn out, by the end of the case, that only some (or none) of them are true. So, we don't here opine on the veracity of his claims. We hold only that, *if* what he says is true, then he's advanced a plausible cause of action.

education building to get a drink of water." *Ibid.* While inside the building, Gomez heard "moans coming out Teacher K. Layton office" and decided to investigate. *Ibid.* (errors in original). This turned out to be an unwise decision because, when he walked in, Gomez saw Layton having sex with another inmate. *Id.* at 8–9. Gomez "immediately" ran out of the education building to report what he had seen to Captain Vernon, who assured Gomez that "he [would] look into his allegation and [report] it to Inspector Smith." *Id.* at 9. Gomez later found out that Captain Vernon never reported the incident to Inspector Smith and instead "told K. Layton that Plaintiff was snitching on her." *Ibid.*

Two weeks later, on August 28, 2020, Gomez saw Layton speaking with Captain Vernon. *Ibid.* When Layton noticed Gomez, she stopped talking to Captain Vernon, walked up to Gomez, and said: "Captain Vernon told me what you told him if you do not check in I am going to make sure you leave Martin C.I. in a body bag." *Ibid.* Gomez immediately reported this threat to Captain Vernon, but Captain Vernon "told Plaintiff 'unless I see you bleeding' I am not giving you any protection[.]" *Id.* at 10.

A few hours later, while Gomez was getting lunch, he again saw "Captain Vernon and K. Layton standing outside . . . with an evil smile on there face [sic] watching Plaintiff." *Ibid.* When Gomez got in line to get lunch, he saw Captain Vernon "point his finger at Plaintiff" and then scream at another inmate, Gary Douglas, to "get him." *Ibid.* Douglas proceeded to stab Gomez repeatedly with a seven-and-a-half-inch knife on the "right side of his chest," "in the back," and "in his left arm." *Id.* at 11. The attack broke Gomez's left ribs and caused his left lung to collapse. *Ibid.* When Gomez yelled for Captain Vernon and K. Layton to help him, the Defendants "started to cheer on inmate Gary Douglas [to] 'kill' Plaintiff[.]" *Ibid.* When help finally arrived, both Captain Vernon and K. Layton "walked away laughing at Plaintiff Gomez and his injuries." *Id.* at 12.

2

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). A "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." §1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted;" or (2) "seeks monetary relief from a defendant who is immune from such relief." § 1915A(b).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

## ANALYSIS

Gomez has sued both Defendants in their individual capacities for their "failure to intervene and prevent the assault by inmate Gary Douglas." Complaint at 13. As we've said, at this stage of the proceedings, we must assume that the factual allegations in Gomez's Complaint are true. *See Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) ("A district court's decision to dismiss for failure to state a claim under 28 U.S.C. § 1915A is reviewed *de novo*, taking the allegations in the complaint as true."), *overruled on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). Viewed in this light, the Complaint sufficiently alleges that the Defendants violated Gomez's Eighth Amendment rights.

The Eighth Amendment imposes on prison officials a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). To prevail on this claim, the plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). "When examining the first element—a substantial risk of serious harm—the court uses an objective standard." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). On the second element, by contrast, the plaintiff must satisfy both an objective and a subjective test. As the Eleventh Circuit has explained: "A prison official violates the Eighth Amendment when he actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it an (objectively) reasonable manner." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (footnote omitted).

Gomez has met all three elements here. *First*, he's alleged that there was a "substantial risk of serious harm" to his person. Although "occasional, isolated attacks by one prisoner" don't necessarily constitute a "substantial risk of serious harm," the Constitution doesn't allow a prisoner to be subjected to "violence and terror[.]" *Purcell v. Estate of Morgan ex rel. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973)). Gomez alleges that Douglas stabbed him repeatedly with a long knife, which broke his ribs and collapsed his lungs. At this early stage of the case, that's plainly enough to establish a substantial risk of serious harm. *See, e.g.*, *Sears v. Baker*, 2020 WL 7061595, at *5 (S.D. Fla. Apr. 10, 2020) (Reid, Mag. J.) ("[The plaintiff] alleged that . . . Townsend issued a threat to have him assaulted after he filed grievances. Shortly thereafter, Plaintiff was attacked. He has alleged that Upshaw arranged for him to be out of his cell and that one of the inmates who attacked him had been talking to Upshaw prior to the second assault."), *report and recommendation adopted*, 2020 WL 7059351 (S.D. Fla. Dec. 2, 2020) (Williams, J.).

4

*Second*, Gomez maintains that the Defendants were deliberately indifferent to his safety—under both the subjective and objective tests. Not only were the Defendants subjectively aware of the risk to Gomez (since they apparently ordered Douglas to attack him), *see* Complaint at 10 (alleging that Captain Vernon "point[ed] his finger at Plaintiff" and told Douglas to "get him"), but they also witnessed the violent attack, refused to intervene despite Gomez's pleas for help, and even laughed at Gomez's injuries, *see id.* at 11–12 ("[T]hese Defendants merely acknowledged to Plaintiff that they saw the 'attack' and despite seeing that Plaintiff Gomez had suffered and was suffering serious injuries, the Defendants failed to stop the attack immediately."). That's not, it goes without saying, an objectively "reasonable manner" in which to respond to a violent inmate-on-inmate attack. *See, e.g., Balbin v. Latin*, 2022 WL 426508, at *2, *4–5 (S.D. Fla. Feb. 11, 2022) (Bloom, J.) (allowing a deliberate-indifference claim to proceed where the defendants ignored the plaintiff's "scream[s] for help [as] the detainees opened the holding cell and proceeded to physically and sexually assault Plaintiff"); *Logan v. Spreadly*, 2020 WL 4041083, at *4 (M.D. Fla. July 17, 2020) (holding that a corrections officer was deliberately indifferent when he "watched Inmate Banks spontaneously and without provocation start punching Plaintiff but declined to intervene").

*Third*, Gomez has alleged a causal link between Douglas's attack and the Defendants' actions. He, after all, claims that the Defendants orchestrated the assault and then ordered Douglas to execute it. *See LaMarca v. Turner*, 995 F.2d 1526, 1539 (11th Cir. 1993) (finding a causal link where the defendant "knew that the actions he undertook would be insufficient to provide inmates with reasonable protection from violence").

One last thing. Gomez has asked for punitive (as well as compensatory) damages against the Defendants. *See* Complaint at 14 ("Plaintiff Gomez also seeks punitive damages in the amount of $200,000 againts [sic] all defendants sued individually[.]"). A prisoner can seek punitive damages against a defendant who violates his constitutional rights *if* he can show that the defendant's conduct

5

was egregious or reprehensible. *See Hoever v. Marks*, 993 F.3d 1353, 1360 (11th Cir. 2021) (en banc) ("[Punitive damages] are imposed on a defendant 'for' deterrence and punishment of his egregious misconduct."); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("[P]unitive damages should only be awarded if the defendant's culpability, after paying compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."). Gomez claims that the Defendants purposefully and maliciously conspired to physically harm him after he uncovered a sexual dalliance between Layton and another inmate. *See* Complaint at 9–10 (averring that Layton told Gomez "I am going to make sure you leave Martin C.I. in a bodybag" and alleging that Captain Vernon said: "unless I see you bleeding I am not giving you any protection"). This apparent "evil motive or intent" behind the Defendants' actions is precisely the kind of "malice or reckless indifference to the plaintiff's federally protected rights" that, if true, would warrant an award of punitive damages. *Atkinson v. Israel*, 2015 WL 13239188, at *7 (S.D. Fla. Dec. 10, 2015) (Ungaro, J.) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Accordingly, we'll allow Gomez's punitive-damages claim to proceed as well.

* * *

Having screened the Complaint, we hereby **ORDER AND ADJUDGE** as follows:

1. Gomez's Complaint [ECF No. 1] shall **PROCEED** against all Defendants.
2. Gomez's Motion to Proceed *in forma pauperis* [ECF No. 3] is **GRANTED**. The Plaintiff shall owe the United States a debt of $350.00, which the Plaintiff must pay to the Clerk of Court as funds become available. To effectuate these payments, the agency with custody over the Plaintiff must forward these payments from the Plaintiff's prisoner account to the Clerk of Court anytime the Plaintiff's account balance exceeds $10.00. That agency shall continue to make these payments until the Plaintiff has paid the filing fees in full.

3. The Plaintiff's Motion for the Appointment of Counsel [ECF No. 4] is **DENIED without prejudice**. Gomez has not alleged the kinds of "exceptional circumstances" that would warrant the appointment of counsel in this civil case. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Gomez can, however, file a motion to have his case referred to the Court's Volunteer Attorney Program. That motion, if filed, would be granted.

4. The Clerk is instructed to administratively **CLOSE** this case. Any party may move to reopen the case once **all of the remaining Defendants** have been served.

**DONE AND ORDERED** in the Southern District of Florida this 4th day of August 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Maximo Gomez, *pro se*

**Florida Department of Corrections**
Inmate Trust Fund
Attn: Don Hartsfield
Centerville Station
P.O. Box 12100
Tallahassee, Florida 32317-2100
Don.Hartsfield@fdc.myflorida.com

**Financial Department**
United States District Court, Southern District of Florida